<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| Francisco Gonzalez, | : | |
| | : | Civil Action No. 12-3711(NLH) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| Donna Zickefoose, | : | |
| Pradip Patel, M.D., and | : | |
| Steven Ruff | : | |
| | : | |
| Defendants. | : | |
| | : | |

APPEARANCES:

Francisco Gonzalez
Federal Correctional Institution, Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
    Plaintiff <u>pro</u> <u>se</u>

David Bober
Assistant United States Attorney
402 E. State Street, Room 430
Trenton, NJ 08608
    Counsel for Defendants

**HILLMAN**, District Judge

    This matter comes before this Court upon the motion for

summary judgment of Defendants Donna Zickefoose, Pradip Patel,

M.D., and Steven Ruff.  [Mot. for S.J., Doc. No. 35].  Plaintiff

Francisco Gonzalez ("Plaintiff"), a prisoner who is confined at

1

FCI Fort Dix, filed this action on June 19, 2012, under <u>Bivens</u> <u>v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), for alleged violations of his Eighth Amendment Constitutional rights based on exposure to environmental conditions that worsened his illnesses, failure to grant a medical transfer, and inadequate medical care. (Compl., Doc. No. 1.)

The Court screened the complaint pursuant to 28 U.S.C. § 1915(e), ordered dismissal of Defendant Lopez de LaSalle without prejudice; and ordered Defendants to file a responsive pleading. (Order, Doc. No. 2.)  Plaintiff submitted a request for reconsideration of the Court's dismissal of Defendant Lopez de LaSalle.  (Letter, Doc. No. 11.)  The Court denied the request for reconsideration, noting Plaintiff had the option to seek leave to file an amended complaint containing new allegations against Defendant Lopez de LaSalle.  (Order, Doc. No. 25.) Plaintiff never sought leave to file an amended complaint.

Defendants filed an Answer.  (Answer, Doc. No. 19.) Subsequently, the Court denied, without prejudice, several requests and motions by Plaintiff for appointment of pro bono counsel.  (Orders, Doc. Nos. 5, 24, 37, 42.)  Discovery was conducted,[1] and Defendants brought a motion for summary judgment

---

[1] The Amended Scheduling Order postponed expert disclosures until this dispositive motion is decided.  (Order, Doc. No. 34.)

2

on July 11, 2014.  (Mot. for S.J., Doc. No. 35.)  On August 25, 2014, the Court ordered Plaintiff to respond to the summary judgment motion.  (Order, Doc. No. 47.)  Plaintiff opposed the motion for summary judgment [Doc. Nos. 52, 53], and later filed an addendum to his opposition brief. [Doc. No. 55.]

This Court has considered the pleadings, motions, briefs and supporting documents, and will decide the motion on the papers, pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons explained below, the Court will grant Defendants' motion for summary judgment as to all but one claim.  More specifically, the Court will deny without prejudice Defendants' motion for summary judgment on, and order further development of, Plaintiff's claim that Defendant Patel violated his Eighth Amendment[2] rights by revoking his first floor pass in retaliation against Plaintiff for refusing to "snitch" on inmates who were smoking.

## I.   BACKGROUND

Plaintiff alleged the following in his Complaint.  He is a 53-year-old inmate who suffers chronic obstructive pulmonary disease ("COPD") caused by emphysema. (Compl., p. 9.)  He was diagnosed with COPD in 2005, and his expected release date is

---

[2] The Court notes Plaintiff has not raised a First Amendment retaliation claim; rather, he alleges Defendant Patel's conduct violated the Eighth Amendment.

August 5, 2021.  (Id.)  Plaintiff lived without serious
complications from COPD until he was transferred to Fort Dix.
(Id.)  Since April 2011, he has required five emergency
hospitalizations.  (Id.)  Plaintiff alleged his decline in
health is directly attributable to environmental factors at Fort
Dix, including exposure to environmental tobacco smoke ("ETS"),
exposure to asbestos and lead-based paint, extreme temperature
fluctuations, lack of air conditioning, and exposure to jet fuel
emissions from the adjoining Air Force Base.  (Id.)

Through the prison's administrative remedy procedure,
Plaintiff sought a transfer to a medical facility to escape the
environmental conditions at Fort Dix, and for better access to
emergency medical staff.  (Id.)  Plaintiff alleged his transfer
request was denied with deliberate indifference to his serious
medical needs.  (Id.)

Plaintiff's specific allegations against Defendant Donna
Zickefoose, Warden, are that she failed to provide a place of
imprisonment free of environmental conditions, especially
second-hand smoke, that worsen Plaintiff's COPD.  (Compl., p. 5,
¶ 4(c)).  Zickefoose became aware of Plaintiff's condition and
his request for a medical transfer when he submitted an "Inmate
Request to Staff" to her on September 11, 2011.  (Compl., p.
12.)  She acknowledged his complaints, and told him to identify
who was smoking, but he feared reprisal by other inmates.  (Id.)

4

Plaintiff's allegations against Dr. Pradip Patel, one of Plaintiff's primary care physicians at Fort Dix, include failure to treat Plaintiff's COPD, failure to authorize Plaintiff's transfer to a medical facility, and cancellation of Plaintiff's first floor pass, leading to his hospitalization. (Compl., p. 8.) Dr. Patel allegedly canceled Plaintiff's first floor pass in September 2011, because Plaintiff refused to snitch on other inmates who were smoking. (Compl., p. 12.) Plaintiff was thus transferred to a second floor room, forcing him to climb staircases several times a day. (Id.) This exertion allegedly caused his twelve-day emergency hospitalization from October 6 through October 17, 2011. (Id.) According to Plaintiff, Dr. Patel knew that canceling the floor pass posed an excessive risk to Plaintiff's health. (Id., pp. 12-13.)

Plaintiff also alleged that Fort Dix medical staff were repeatedly slow to refill his COPD medications, citing an example where a prescribed inhaler, Advair, had not been provided three weeks after it was prescribed by Dr. Steeger on May 17, 2012. (Id., p. 16.)

Plaintiff alleged Defendant S. Ruff, a "Health Information Tech" at Fort Dix, ignored Plaintiff's informal remedy request, wherein he complained that environmental factors at Fort Dix exacerbated his COPD, and caused him to be hospitalized for COPD-related illnesses. (Id., pp. 13-14.) Ruff's only response

was to deny Plaintiff's request for a medical transfer and refer him to his Unit Team to discuss exposure to conditions that exacerbate COPD.  (Id.)

Plaintiff then reasserted his claims in a request to Zickefoose, explaining to her that COPD was a fatal disease. (Id., p. 14.)  Zickefoose denied his request for a medical transfer and again suggested that he report any smokers to his Unit Team. (Id.)  Plaintiff alleged Zickefoose's response failed to address his chronic care needs, in violation of his Eighth Amendment rights.  (Id.)  Plaintiff then suffered a seizure attributable to COPD, causing another hospitalization.  (Id., p. 15.)

In support of their motion for summary judgment, Defendants asserted the following:  (1) Defendants Zickefoose and Ruff are entitled to summary judgment because they were not personally involved in Plaintiff's medical care; (2) BOP medical staff were not deliberately indifferent to Plaintiff's serious medical needs because they consistently treated his chronic conditions; and (3) allegations of exposure to environmental hazards do not rise to the level of an Eighth Amendment violation.  (Mem. of Law in Supp. of Defs' Mot. for S.J. ("Defs' Mem.") Doc. No. 35-1.)  In support of their contentions, Defendants submitted the Declaration of Anthony Boyce, Doc. No. 35-3; Declaration of Tara

Moran, Doc. No. 35-4; Declaration of Pradip Patel, Doc. No. 35-5;[3] and Declaration of Steven Ruff, Doc. No. 35-6.

Plaintiff opposed Defendants' motion for summary judgment. (Pl's Response to Defs' Mot. for S.J. ("Pl's Resp."), Doc. No. 52;[4] Pl's Mem. of Law in Supp. Response to Defs' Mot. for S.J. (("Pl's Mem."), Doc. No. 53.)  Plaintiff asserted that when he arrived at Fort Dix in January 2009, he immediately advised medical staff that he had two lung collapses in 2005.  (Pl's Resp., p. 1.) Plaintiff, however, also asserted his COPD was under control before he arrived at Fort Dix, and his subsequent hospitalizations are evidence that environmental factors at Fort Dix exacerbated his COPD.  (Pl's Mem., pp. 1-2.)  Plaintiff further contended there is evidence of medical staff's refusal to follow treatment recommendations of specialists.  (Id., p. 6.)

---

[3] Paragraph 74 of Dr. Patel's Declaration states that pertinent medical records are attached as Exhibit 1, but the exhibit was not attached.  Plaintiff, however, submitted his medical records as an attachment to his Memorandum of Factual Contentions, filed on May 5, 2014. (Doc. No. 28.)  Therefore, the Court relies upon those medical records in ruling on the instant motion.

[4] Exhibit 1 to Plaintiff's Response contains Plaintiff's administrative remedy requests and responses regarding changes made in his prescription medications in June 2014, long after the complaint was filed.  The records do not reflect any personal involvement of any of the defendants in this action, as is required to state a constitutional violation.  Barkes v. First Correctional Medical Inc., 766 F.3d 307, 337-38 (3d Cir. 2014).

Plaintiff asserted there was a period of seven months in which he had to wait to see a pulmonologist, Dr. Steeger, and during that time he was housed on a third floor, requiring constant stair climbing in a building without air conditioning. (Id., p. 3.)  According to Plaintiff, Dr. Patel reviewed Dr. Steeger's notes and should have known about Plaintiff's worsening condition.  (Id., pp. 3-4.) Dr. Patel also tried to force Plaintiff to identify inmates who were smoking.  (Id., p. 6.)  Plaintiff alleged that Dr. Patel continually refused to follow medical recommendations of specialists who treated Plaintiff. (Id.; Ex. A.)[5]  As to Defendant Ruff, Plaintiff alleged Ruff smoked in his presence on the occasions when they met.  (Id., p. 6.)

## II.  PLAINTIFF'S MEDICAL RECORDS

Plaintiff's medical treatment records, beginning when he entered FCI Fort Dix in January 2009, show the following. Plaintiff had his first medical health screen on January 15, 2009, and he was treated with an albuterol inhaler for asthma. (Declaration of Pradip Patel ("Patel Decl."), Doc. No. 35-5, ¶ 3; see also 2009 medical records, Doc. No. 28-6.)  Later that

---

[5] The exhibit Plaintiff offered in support of this contention is a memo, which appears to have been created by Plaintiff, summarizing his hospital visits in July and August 2014, well after the complaint was filed. [Ex. A, Doc. No. 53, pp. 8-9.] Nevertheless, the Court reviewed the exhibit for evidence pertaining to the claims in Plaintiff's complaint.

month, he had his first chronic care clinic appointment, and he
complained of a two-week productive cough, and reported a
history of emphysema and collapsed lung.  (Patel Decl., ¶ 4.)
He had difficulty breathing when climbing stairs and in cold
temperatures.  (Id.)  On examination, he had some signs of COPD
but he was diagnosed with asthma, and a pulmonary function test
was recommended.  (Id.)  He was also prescribed albuterol and an
antibiotic, and he was referred for a chest x-ray.  (Id.)
Plaintiff was seen in follow up just three days later, and
prescribed another inhaler for more aggressive treatment.  (Id.,
¶ 5.)

On June 30, 2009, Plaintiff was seen in "sick call," and he
complained his inhalers were not working.  (Id., ¶ 8.)  He was
wheezing and could not walk up stairs, which he attributed to an
increase in humidity.  (Id.)  Medical staff submitted a request
for Plaintiff to see a pulmonologist.  (Id.)  The request was
approved on August 7, 2009.  (Id.)  Several days later,
Plaintiff's lungs had diminished sounds, he was prescribed a new
inhaler, and an x-ray and chest CT scan were ordered based on
his history of emphysema and bullous disease.  (Id., ¶ 9.)

On August 11, 2009, Physician Assistant Edward Gostkowski
designated Plaintiff as a Care Level 2 inmate, defined as a
stable outpatient with chronic illness who was able to perform
activities of daily living.  (Id., and August 11, 2009 medical

record, Doc. No. 28-6, p. 14.)  Plaintiff was issued a first floor housing pass and bottom bunk pass for one year.  (Id.)

Plaintiff saw a pulmonologist, Dr. Steeger, on August 20, 2009.  (Id., ¶ 11.)  Dr. Steeger diagnosed COPD and large bullae of the right upper lung lobe.  (Id.)  Dr. Steeger recommended two new inhalers and requested a pulmonary function test.  (Id.)  Plaintiff continued to receive evaluation and treatment for breathing difficulties, cough and congestion.  (Id., ¶¶ 12-13.)

Plaintiff underwent a pulmonary function test on November 12, 2009, and he was evaluated by a pulmonologist again in December.  (Id., ¶¶ 14, 15.)  The pulmonologist diagnosed emphysema, obstructive lung disease, and decreased diffusing capacity.  (Id.)  He recommended treatment with Advair, Spiriva, and Combivent.  (Id.)  The medications were ordered at Fort Dix four days later.  (Id., ¶ 15.)  Plaintiff continued to receive evaluation, including chest x-rays, chest CT scans, physical examinations, and treatment for COPD and respiratory infections, including inhalers and antibiotics, both in primary care and from a pulmonologist.  (Id., ¶¶ 16-27.)  Plaintiff had another pulmonary function test at an outside hospital on September 9, 2010.  (Id., ¶ 29.)  The findings were consistent with mild obstructive lung disease, and mildly reduced diffusing capacity. (Id.)

Dr. Patel was assigned as Plaintiff's primary care physician at Fort Dix in approximately April 2011. (Id., ¶ 2.) Plaintiff was hospitalized on April 18, 2011, with complaints of swelling and pain in his left hand. (Id., ¶ 35.) He was treated for cellulitis. (Id.) In the hospital, Plaintiff also saw a pulmonologist who diagnosed Plaintiff with COPD and bullous disease. (Id.) Plaintiff was discharged on April 25, 2011. (Id., ¶ 36.)

Plaintiff was hospitalized again in June 2011, when he complained of shortness of breath, fever and severe pain. (Id., ¶ 39.) Pulmonary embolism was ruled out. (Id.) A CT scan showed an increase in the right lower lobe lung nodule. (Id.) Plaintiff remained in the hospital until June 18, 2011, to be followed by infectious disease specialists. (Id., ¶ 44.)

Plaintiff began his formal administrative remedy procedure over the denial of his medical transfer request in August 2011. (Attachs. to Compl., pp. 22-28.) On August 8, 2011, Plaintiff saw a cardiologist to evaluate his shortness of breath, which occurred even when walking short distances, especially in hot weather. (Id., ¶ 46.) The cardiologist felt Plaintiff's shortness of breath was probably due to COPD, but he could not rule out angina. (Id.)

In October 2011, Plaintiff reported that medications had not helped his cough, and smoking by other inmates was making it

11

worse, but he was afraid to report on them.  (Id., ¶ 48.)  Dr. Patel diagnosed pneumonia, and Plaintiff was taken to an outside hospital.  (Id.)  When Plaintiff was discharged on October 17, 2011, his diagnoses were bilateral pneumonia, post bronchoscopy, COPD, and lung nodule.  (Id., ¶ 49.)  When Plaintiff returned to prison, he was scheduled for twice daily nebulizer therapy, and given Levaquin until his other prescriptions were filled.  (Id., ¶ 50.)  Upon Plaintiff's request on October 19, 2011, Dr. Patel renewed Plaintiff's first floor and lower bunk passes for six months.  (Id.)

On November 18, 2011, Dr. Steeger noted Plaintiff's COPD/emphysema was much improved since his hospitalization. (Id., ¶ 53.)  He recommended treatment with Spiriva, Advair, Combivent, and Albuterol nebulizer therapy every twelve hours. (Id.)

Plaintiff was sent to a hospital on December 6, 2011, because his chest x-ray was suggestive of pneumonia.  (Id., ¶¶ 56-57.)  He was hospitalized for five days for treatment of bilateral pneumonia.  (Id.)  Plaintiff told Dr. Patel that he felt much better on December 13, 2011, but he still complained of shortness of breath on exertion and from smoking in his unit. (Id., ¶ 58.) Plaintiff again requested transfer to a medical institution or a facility closer to his home in Miami.  (Id.) Dr. Patel noted Gonzalez was a Care Level 2 inmate, which did not

make him eligible for a transfer to a Federal Medical Center.
(Id.)

After reviewing Plaintiff's stress test results, the
cardiologist believed Plaintiff's shortness of breath was due to
COPD, not coronary disease, but he recommended further
evaluation and continued treatment for COPD.  (Id., ¶ 59.)
Plaintiff received continued treatment and evaluation for COPD
and respiratory infections in primary care and from a
pulmonologist, and he also received continued cardiac
evaluation.  (Id., ¶¶ 60-72.)

### III. DISCUSSION

A.  Summary Judgment Standard

Summary Judgment is proper where the moving party "shows
that there is no genuine dispute as to any material fact," and
the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56(a); Abraham v. Raso, 183 F.3d 279, 287 (3d
Cir. 1999).  The burden on the moving party may be satisfied by
showing there is an absence of evidence to support the nonmoving
party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325
(1986).  A party asserting that a fact is genuinely disputed
must support the assertion by citing materials in the record,
including depositions, documents, affidavits or declarations or
other materials.  Fed. R. Civ. P. 56(c)(1).  "An affidavit or
declaration used to support or oppose a motion must be based on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "If a party fails to properly support an assertion of fact . . . the court may . . . grant summary judgment . . ." Fed. R. Civ. P. 56(e).

In determining whether there is a genuine dispute of a material fact, the court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences from those facts. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact raises a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

B.   Eighth Amendment Standard

The Eighth Amendment's prohibition against cruel and unusual punishment requires that inmates are provided adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). To state a claim of inadequate medical care in violation of the Eighth Amendment, an inmate must set forth:  (1) a serious medical need; and (2) a prison official's deliberate indifference to that serious medical need. Estelle, 429 U.S. at 106. A serious medical need includes a need for which "denial of treatment

14

would result in the unnecessary and wanton infliction of pain"
or a "life-long handicap or permanent loss." Atkinson v.
Taylor, 316 F.3d 257, 273 (3d Cir. 2003)(internal quotations and
citations omitted).

The second, subjective element of the Estelle test requires
an inmate to show that a prison official acted with deliberate
indifference to a serious medical need.  Natale v. Camden County
Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).
Conduct that constitutes malpractice or negligence does not rise
to the level of deliberate indifference; deliberate indifference
is a reckless disregard of a known risk of harm.  Farmer v.
Brennan, 511 U.S. 825, 836 (1994).  Courts will not second guess
"the adequacy a particular course of treatment" in the exercise
of sound professional judgment.  Inmates v. Allegheny County
Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(quoting Bowring
v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

In the Third Circuit, when a plaintiff seeks to hold a
defendant liable under the Eighth Amendment in his or her role
as a supervisor, a four-part test applies.  Barkes, 766 F.3d at
317.  Thus, a plaintiff must:

> identify a supervisory policy or practice
> that the supervisor failed to employ, and
> then prove that: (1) the policy or practice
> in effect at the time of the alleged injury
> created an unreasonable risk of a
> constitutional violation; (2) the defendant-
> official was aware that the policy created

> an unreasonable risk; (3) the defendant was
> indifferent to that risk; and (4) the
> constitutional injury was caused by the
> failure to implement the supervisory
> practice or procedure.

Id.(citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1999;

Brown v. Muhlenberg Twp, 269 F.3d 205 (3d Cir. 2001)).

A non-physician defendant is not deliberately indifferent
to a prisoner's serious medical needs in violation of the Eighth
Amendment if she fails to respond to an inmate's administrative
complaint regarding medical treatment while the inmate is
already receiving treatment by the prison doctor. Durmer v.
O'Caroll, 991 F.2d 64, 69 (3d Cir. 1993). Non-medical personnel
are entitled "to presume the competence of medical staff in
treating a prisoner. . ." Davis v. Superintendent of Somerset
SCI, No. 14-3746, 2015 WL 75260, at *2 (3d Cir. Jan 7,
2015)(citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.
2004)). Eighth Amendment claims against non-medical personnel
based on an unmet need for medical care are limited to
circumstances where the non-medical personnel had "a reason to
believe (or actual knowledge) that prison doctors or their
assistants are mistreating (or not treating) a prisoner."
Spruill, 372 F.3d at 236. If non-medical staff were justified
in believing the prisoner was "in capable hands" with medical
experts, dismissal of the Eighth Amendment claim is proper.
Id.; Mines v. Levi, Civil Action No. 07-1739, 2009 WL 839011, at

*6 (E.D.Pa. March 26, 2009)(failing to respond to a grievance sent by a prisoner is not sufficient to demonstrate personal involvement of a prison supervisor)(citation omitted)).

An inmate can state a claim for violation of the Eighth Amendment if prison conditions deprive the inmate of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Prison conditions violate the Eighth Amendment when an inmate is "denied basic human needs, such as food, clothing, shelter, sanitation, medical care [or] personal safety." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). Some conditions, in combination, may constitute a violation if they deprive an inmate of "a single, identifiable" human need. Wilson v. Seiter, 501 U.S. 294, 304-05 (1991); Hubbard v. Taylor, 399 F.3d 150, 164-65 (3d Cir. 2005).

To state a claim for an Eighth Amendment violation based on exposure to environmental tobacco smoke ("ETS"), an inmate must show that he is being exposed to unreasonably high levels of ETS that pose an unreasonable risk of serious damage to his future health. Helling v. McKinney, 509 U.S. 25, 35 (1993). This objective factor:

> requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to

17

be so grave that it violates contemporary
standards of decency to expose *anyone*
unwillingly to such a risk.

Id. at 36 (emphasis in original).  The Third Circuit expanded

the objective factor to include proof of a present injury.

Atkinson, 316 F.3d at 266.

Second, a plaintiff must prove the subjective factor,

deliberate indifference to a serious risk of harm.  Helling, 509

U.S. at 36.  The prison authorities' attitudes and conduct,

particularly with respect to smoking policy, bears heavily on

the inquiry into deliberate indifference.  Id.

C.   Medical Transfer Request

It is undisputed that Defendant Zickefoose, the warden, and

Defendant Ruff, a medical technician, are not physicians, and

Plaintiff was receiving medical evaluation and treatment at Fort

Dix beginning in January 2009, the month he was transferred

there.  (Compl., pp. 5-8, Exs. to Pl's Mem. of Factual

Contentions, Doc. No. 28.)  It is also undisputed that through

Plaintiff's administrative remedy requests Defendants Zickefoose

and Ruff knew that Plaintiff disagreed with Dr. Patel's denial

of Plaintiff's request for a medical transfer to another

facility.  (Attachs. to Compl., pp. 22-38.)  Plaintiff's request

for a transfer was based on his belief that environmental

factors at Fort Dix were the cause of his hospitalizations for

COPD-related illnesses, and he wanted a facility with better
access to emergency care.  (Compl., ¶ 9.)

Defendants Zickefoose and Ruff were entitled to rely on Dr.
Patel because there is nothing in the record indicating they had
a reason to believe Dr. Patel was not exercising sound,
professional judgment in determining Plaintiff was a Care Level
2 inmate, defined as a stable outpatient with chronic illness
who was able to perform activities of daily living, thus not
qualified for a medical transfer. (Patel Decl., ¶¶ 9, 58, and
see generally medical records, Doc. Nos. 28-6 through 28-14.)
In fact, Dr. Patel was not alone in his opinion.  Plaintiff was
first determined to be a Care Level 2 inmate by Physician
Assistant Edward Gostkowski in August 2009.  (Medical record,
Doc. No. 28-6, p. 14.)

Although Plaintiff required several hospitalizations for
COPD-related illnesses, Fort Dix medical staff approved his
hospitalizations, and continued to medically monitor and treat
him when he was returned to prison in stable condition.  As
Plaintiff recognized, COPD is progressive and not curable, it
can only be managed.  (Compl., pp. 19-20.)  The medical records
overall support Dr. Patel's judgment that Plaintiff's chronic
illness could be adequately managed at Fort Dix, with outside
treatment when needed.  Therefore, Plaintiff's claim that the

19

denial of his medical transfer request violated the Eighth Amendment will be dismissed with prejudice as to all Defendants.

   D.   Adequacy of Medical Care

   Plaintiff's specific allegations of inadequate medical care are based on several incidents.  Plaintiff alleged inadequate medical care because he was denied a first floor pass and a lower bunk pass when he first entered FCI Fort Dix.  He then alleged Dr. Patel violated his rights by revoking his first floor pass and lower bunk pass in September 2011, because Plaintiff refused to "snitch" on inmates who were smoking. Plaintiff further alleged he was denied adequate medical care because it was seven months before he was evaluated by a pulmonologist after transferring to Fort Dix.  Finally, Plaintiff alleged inadequate medical care because his prescriptions were not timely filled and medications prescribed by a specialist were substituted with other medications. Defendants do not dispute that Plaintiff has a serious medical need based on COPD and related illnesses.

   1.   First Floor and Lower Bunk Passes

   In Plaintiff's response to the motion for summary judgment, he stated that he began an administrative remedy request in February 2009 because he was denied first floor housing and a

20

bottom bunk pass.  (Doc. No. 52, pp. 1-2.)[6]  The warden denied this request because there was no clinical evidence of respiratory distress in Plaintiff's February 9, 2009 medical record. (Id., pp. 2-3.)  His first floor housing and lower bunk passes were not approved until August 2009. (Id., p. 3.)

While Plaintiff may have suffered increased shortness of breath due to COPD when climbing stairs or climbing into an upper bunk, this does not rise to the level of unnecessary or wanton infliction of pain that would give rise to supervisory liability by a non-physician, especially because Plaintiff was receiving medical treatment for these symptoms. (See 2009 medical records, Doc. No. 28-6.)  Where a prisoner has received evaluation and treatment for his serious medical need, and a physician has not recommended a particular treatment, in this case first floor housing and a lower bunk, a prison official does not violate the Eighth Amendment for deliberate indifference by denying the prisoner's request.  See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)(deliberate indifference is demonstrated "when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a

---

[6] Plaintiff submitted his 2009 administrative remedy requests and responses with his Memorandum of Factual Contentions.  (Doc. No. 28-2, pp. 15-26.)

physician capable of evaluating the need for such treatment.")(quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Also in Plaintiff's response to the motion for summary judgment, Plaintiff repeated his allegation that Dr. Patel revoked his first floor pass in September 2011, and moved him to a second floor room, in retaliation for refusing to snitch on other inmates who were smoking. (Doc. No. 52, pp. 19-20.) Plaintiff alleged the revocation of his first floor pass was "confirmed to me by my Correctional Officer Mr. Batiste." (Doc. No. 52, p. 19.) Plaintiff claimed that when he confronted Dr. Patel about the revocation, Dr. Patel told Plaintiff that if he wanted to keep his first floor room, he would have to inform on the inmates who were smoking. (Id.) When Plaintiff refused, he was moved to room 217 on the second floor, directly across the hall from a restroom where most of the smoking by inmates occurred. (Id., p. 20.)

Plaintiff admits Dr. Patel gave him a first floor pass on October 19, 2011, but he had to wait a month for a bed to open up. (Id., p. 21.) Plaintiff blames his December 2011 hospitalization on exposure to smoke on the second floor, caused by the delay in receiving a first floor pass. (Id., p. 23

Plaintiff has not supported these allegations by affidavit or declaration by a person with personal knowledge or any other

material that can be relied on to show a genuine dispute of material fact in opposition to summary judgment.  See Fed. R. Civ. P. 56(c).  It is unclear from the allegations and the medical records exactly when Plaintiff's first floor pass was revoked, or how long Plaintiff was housed on the second floor before he was hospitalized for pneumonia from October 6, 2011 through October 17, 2011.  (2011 medical records, Doc. No. 28-10, pp. 17-33.)

Defendants offered evidence that Dr. Patel renewed Plaintiff's first floor and lower bunk passes at Plaintiff's request on October 19, 2011, two days after his return from hospitalization.  (Patel Decl., ¶ 50; see also medical records, Doc. No. 28-10, pp. 34-38.)  Defendants, however, did not respond to Plaintiff's allegation that Dr. Patel revoked his first floor pass in September 2011 in retaliation for Plaintiff's refusal to snitch on other inmates who were smoking.  The Court cannot state as a matter of law that Plaintiff's Eighth Amendment claim against Dr. Patel would fail if Plaintiff could establish Dr. Patel revoked his first floor pass, and the pass was medically prescribed to alleviate Plaintiff's COPD, based solely on retaliation for refusing to snitch on other inmates for smoking.

Where a party fails to support an assertion of fact or fails to properly address another party's assertion of fact, a

court may give a party the opportunity to properly support or address the fact.  Fed. R. Civ. P. 56(e)(1).  Here, both parties failed to address Plaintiff's claim by proper citation to materials in the record sufficient to establish the presence or absence of a genuine dispute of material fact.  The Court will deny summary judgment on this claim without prejudice, and give the parties an opportunity to submit materials in support of or opposition to the claim.

### 2.   Evaluation by a Pulmonologist

Plaintiff alleges violation of his Eighth Amendment right to medical care because he was not evaluated by a pulmonologist during the first seven months of his incarceration at Fort Dix in 2009.  Presumably this claim is directed against the warden, Defendant Zickefoose, because Dr. Patel did not begin treating Plaintiff until April 2011.  While it is true that Plaintiff reported a history of emphysema and showed signs of COPD before he saw a pulmonologist, the records do not support a finding that Defendant Zickefoose was deliberately indifferent to Plaintiff's need to see a pulmonologist sooner.  Plaintiff had a serious medical need requiring evaluation and treatment, but he received regular evaluation and treatment from primary care providers from January 2009 until he began seeing a pulmonologist at Fort Dix in August 2009. (2009 medical records, Doc. No. 28-6.)

A non-physician prison official is not deliberately indifferent when she fails to respond to an administrative complaint regarding an inmate's disagreement with the treatment and evaluation he was provided by medical staff.  Durmer, 991 F.2d at 69.  Furthermore, there is no evidence that Plaintiff's medical treatment from January 2009 through August 2009 was so inadequate that it caused Plaintiff permanent injury or wantonly inflicted pain on him.  For this reason, this claim will be denied.

### 3.   Substituted Prescription Medications and Delays Filling Prescriptions

In his Complaint, Plaintiff alleged he had not received prescriptions for Spiriva or Advair three weeks after the Spiriva should have been renewed (May 15, 2012) and after Advair was first prescribed (May 17, 2012).  (Compl., p. 16.) Plaintiff's medical record from May 24, 2012, indicates that Dr. Steeger recommended Spiriva and Advair on May 17, 2012, and Fort Dix medical staff believed Plaintiff was already on these medications.  (Medical Record, Doc. No. 28-13, p. 27.)

The records also indicate that Plaintiff saw Dr. Patel in Health Services on May 23, 2012, and Dr. Patel prescribed or renewed an albuterol inhaler and Tiotroprium bromide [Spiriva], and Fluticasone/Salmeterol [Advair] for COPD.  (Medical Record, Doc. No. 28-13, pp. 16-23.)  Dr. Patel was not deliberately

25

indifferent to Plaintiff's serious medical needs because he ordered Plaintiff's prescriptions one week after the pulmonologist recommended them.  See Beckett v. Pennsylvania Dept. of Corrections et al, --- F. App'x ---, No. 14-3656, 2015 WL 75258, at *3 (3d Cir. Jan. 7, 2015)(granting summary judgment where inmate offered no evidence from which a reasonable juror could conclude that defendants intentionally refused to provide needed treatment or delayed necessary treatment for a non-medical reason).

In response to Defendants' motion for summary judgment, Plaintiff also asserted that in September 2012, Dr. Patel refused to give him the medications a pulmonologist ordered in July 2012, instead substituting other medications. (Doc. No. 52, p. 26.)  Plaintiff further claimed that upon his discharge from an outside hospital in July 2013, his active prescriptions did not include Advair or Combivent, which a pulmonologist had recommended in May 2013.  (Doc. No. 52, p. 29.)[7]  There is no viable claim for an Eighth Amendment violation where one doctor disagrees with another doctor's recommended prescription medication, if a particular medication was not ordered exclusively.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir.

---

[7] The Court notes Plaintiff does not allege personal involvement of any Defendant in failing to prescribe or fill prescriptions for Advair or Combivent after his July 2013 hospitalization.

1990) (distinguishing Martinez v. Mancusi, 443 F.2d 921,924-25
(2nd Cir. 1970) where defiance of explicit medical instructions
from a surgeon resulted in serious and obvious injuries)).
There is no evidence that particular medications were
exclusively ordered and could not be substituted here.  For
these reasons, Defendants are entitled to summary judgment on
Plaintiff's claims that substitution of his medications and
delayed filling of his prescriptions violated his Eighth
Amendment rights.

    C.   Environmental Conditions

    Plaintiff alleged Defendants violated his Eighth Amendment
rights by exposing him to second-hand smoke from cigarette
smoking by Defendant Ruff and other inmates.  (Pl's Resp., p.
6.)  He further alleged Defendants failed to act on his
complaints that other environmental factors, including jet fuel
admissions, asbestos tile, lead paint, humidity, and lack of air
conditioning exacerbated his COPD, and led to his
hospitalizations.  (Compl., p. 9.)

    Here, Plaintiff failed to meet the objective prong of the
Helling test because he failed to submit evidence that he was
exposed to unreasonably high levels of ETS.  Plaintiff alleged,
without citation to materials in the record, that Defendant Ruff
smoked in his presence, without quantifying how many cigarettes

he smoked, the number of occasions when this occurred, and the duration of time he was exposed to Ruff smoking,

Plaintiff similarly failed to quantify the ETS he was exposed to by other inmates who were violating the no-smoking regulation.  He established by submitting his administrative remedy requests that he complained to staff that inmates smoked in the bathroom, and the smoke entered his room.  In his brief in opposition to summary judgment, Plaintiff alleged there was more than one or two smokers, and the smoking was constant at times when a particular officer was not stationed on a particular floor.  Even with the additional allegations in Plaintiff's brief, this falls short of the high threshold required to state the objective element of an Eighth Amendment claim.  See Griffin v. DeRosa, 153 F. App'x 851, 853 (3d Cir. 2005)(twenty-month exposure to ETS from eight to ten smokers every time inmate used restroom was insufficient to allege Eighth Amendment violation).  Plaintiff also asked the Court to take judicial notice of cases describing the amount of contraband found in Fort Dix, including tobacco.[8]  Even if the

---

[8] (Doc. No. 52, p. 5, citing Velasquez v. Zickefoose, Civ. No. 11-2459(RMB), 2011 WL 6339187 (D.N.J. Dec. 19, 2011)(noting an investigative report at Fort Dix in December 2009 put inmates on notice that unit-wide restrictions would be enforced when the large amounts of contraband, including cell phones and tobacco, were recovered); Walden v. Longley, Civ. No. 11-111 Erie, 2012 WL 4971885(W.D.Pa. Sept. 13, 2012)(inmate disciplined in 2010 for possession of numerous packets of tobacco); and Alamo v.

Court acknowledges that the tobacco described in these cases was found in Fort Dix, the evidence does not objectively establish the level of Plaintiff's exposure to tobacco smoke during the relevant time period.

Assuming for a moment that Plaintiff could establish the objective element of the claim, the record does not support deliberate indifference to second-hand smoke by Defendants. Defendants offered evidence that FCI Fort Dix prohibits smoking in its facilities, the BOP enforces the regulation against inmates, with potentially harsh sanctions imposed on violators, and the BOP at Fort Dix has sanctioned sixty inmates for tobacco-related violations since January 2010. (Declaration of Anthony Boyce, Doc. No. 35-3.) Prison officials' attitudes about smoking is a significant factor in whether they were deliberately indifferent to the effect of second-hand smoke in the environment. <u>Helling</u>, 509 U.S. at 36.

Plaintiff complains that Defendants wanted him to report who was smoking, but he did not because he feared retaliation. It was reasonable for Defendants to ask Plaintiff who was smoking so they could stop it. This also suggests prison officials were not indifferent, they wanted to enforce the ban

---

<u>Zickefoose</u>, Civ. No. 11-5416(JBS), 2013 WL 1007676 (D.N.J. Mar. 12, 2013)(inmate disciplined for introducing contraband, including tobacco, into Fort Dix).

on smoking by punishing specific violators.  Thus, the evidence does not support the objective or subjective prongs of the Eighth Amendment test for exposure to ETS, and Defendants will be granted summary judgment on this claim.

The same test applies to Plaintiff's Eighth Amendment claims based on exposure to asbestos tile, jet fuel emissions from a nearby Air Force Base, humidity, lack of air conditioning, and lead paint exposure or the combination of environmental factors.  Again, an inmate must prove objective and subjective elements to establish an Eighth Amendment violation based on prison conditions.  Wilson v. Seiter, 501 U.S. 294, 299 (1991).

Plaintiff has provided nothing beyond the fact that he complained of exposure to asbestos tile, lead paint, jet fuel emissions, and uncomfortable temperatures.  Without any concrete evidence of the level of exposure to these hazards, let alone any medical evidence that the environmental conditions constituted a serious risk to his health, Defendants are entitled to summary judgment on this claim.  See Belland v. Matachiski, Civ. Action No. 1:05-CV-1595, 2009 WL 1585811, at *7 (M.D.Pa. June 3, 2009)(unsupported allegations are inadequate for a reasonable jury to conclude "without pure speculation" that an Eighth Amendment violation occurred).

IV.   CONCLUSION

Plaintiff has failed to set forth evidence sufficient to survive summary judgment on his claims that Defendants violated his Eighth Amendment rights by denying his medical transfer request, that Defendants provided inadequate medical care for his illnesses, or that they were deliberately indifferent to prison conditions, particularly second-hand smoke, that posed a serious risk to his health.

The parties, however, failed to properly address, with citation to materials in the record, Plaintiff's claim that Dr. Patel violated his Eighth Amendment rights by revoking his first floor pass in September 2011, in retaliation for Plaintiff's refusal to snitch on other inmates who were smoking.  The Court will deny summary judgment on this particular claim without prejudice, and the parties will be given an opportunity to further address the claim, pursuant to Federal Rule of Civil Procedure 56(e)(1).

At Camden, New Jersey                    s/ Noel L. Hillman
                                         Noel L. Hillman
                                         United States District Judge

Dated:  February 26, 2015

31