UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
FRANCISCO GONZALEZ,           :
                              :
        Plaintiff,            :    Civ. No. 12-3711 (NLH)
                              :
    v.                        :    OPINION
                              :
DONNA ZICKEFOOSE, et al.,     :
                              :
        Defendants.           :
_____:

APPEARANCES:
Francisco Gonzalez, #49351-004
D. Ray James Correctional Facility
G-1 015L
HWY 252 East
Folkston, GA 31537
     Plaintiff pro se

David Bober, Esq.
Assistant United States Attorney
402 E. State Street, Room 430
Trenton, NJ 08608
     Counsel for Defendants


HILLMAN, District Judge

     This matter comes before the Court by way of a motion (ECF
No. 62) by Defendant Pradip Patel, M.D., seeking summary
judgment pursuant to Federal Rule of Civil Procedure 56.  The
Court has considered the parties' submissions and decides this
matter pursuant to Federal Rule of Civil Procedure 78.

     For the reasons that follow, Defendant's motion for summary
judgment will be DENIED.

I.   <u>PROCEDURAL HISTORY</u>

Plaintiff, an inmate confined at the Federal Correction Institution ("FCI") in Fort Dix, New Jersey, filed this action asserting claims pursuant to <u>Bivens v. Six Unknown Fed.</u> <u>Narcotics Agents</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971). (ECF No. 1).  The Court screened the complaint pursuant to 28 U.S.C. § 1915(e), ordered dismissal of Defendant Lopez de LaSalle without prejudice; and ordered Defendants to file a responsive pleading. (ECF No. 2).  Defendants filed an Answer and discovery was conducted.

Defendants then filed a motion for summary judgement. (ECF No. 35).  In an Order dated February 27, 2015, the Court granted Defendants' motion for summary judgment as to all but one claim. (ECF No. 57).  Plaintiff filed a motion for reconsideration (ECF No. 59), which the Court denied in an Order dated December 18, 2015 (ECF No. 71).  While Plaintiff's motion for reconsideration was under review by the Court, Defendant Patel — the only remaining Defendant in the case — filed the instant motion for summary judgment. (ECF No. 62).

On or about January 5, 2016, Plaintiff filed a Notice of Appeal with the Third Circuit Court of Appeals (ECF No. 72), which was dismissed on May 5, 2016 for lack of appellate jurisdiction (ECF No. 75).

II.  <u>FACTUAL BACKGROUND</u>

The factual allegations of the Complaint are summarized in

the Court's February 27, 2015 Opinion:

> Plaintiff alleged the following in his Complaint.  He
> is a 53-year-old inmate who suffers chronic
> obstructive pulmonary disease ("COPD") caused by
> emphysema. (Compl. 9, ECF No. 1).  He was diagnosed
> with COPD in 2005, and his expected release date is
> August 5, 2021. (<u>Id.</u>).  Plaintiff lived without
> serious complications from COPD until he was
> transferred to Fort Dix. (<u>Id.</u>).  Since April 2011, he
> has required five emergency hospitalizations. (<u>Id.</u>).
> Plaintiff alleged his decline in health is directly
> attributable to environmental factors at Fort Dix,
> including exposure to environmental tobacco smoke
> ("ETS"), exposure to asbestos and lead-based paint,
> extreme temperature fluctuations, lack of air
> conditioning, and exposure to jet fuel emissions from
> the adjoining Air Force Base. (<u>Id.</u>).
>
> Through the prison's administrative remedy procedure,
> Plaintiff sought a transfer to a medical facility to
> escape the environmental conditions at Fort Dix, and
> for better access to emergency medical staff. (<u>Id.</u>).
> Plaintiff alleged his transfer request was denied with
> deliberate indifference to his serious medical needs.
> (<u>Id.</u>).
>
> . . .
>
> Plaintiff's allegations against Dr. Pradip Patel, one
> of Plaintiff's primary care physicians at Fort Dix,
> include failure to treat Plaintiff's COPD, failure to
> authorize Plaintiff's transfer to a medical facility,
> and cancellation of Plaintiff's first floor pass,
> leading to his hospitalization. (Compl. 8, ECF No. 1).
> Dr. Patel allegedly canceled Plaintiff's first floor
> pass in September 2011, because Plaintiff refused to
> snitch on other inmates who were smoking. (<u>Id.</u> at 12).
> Plaintiff was thus transferred to a second floor room,
> forcing him to climb staircases several times a day.
> (<u>Id.</u>).  This exertion allegedly caused his twelve-day
> emergency hospitalization from October 6 through
> October 17, 2011. (Id.).  According to Plaintiff, Dr.

> Patel knew that canceling the floor pass posed an
> excessive risk to Plaintiff's health. (Id. at 12-13).

(Op. 3-4, 5, Feb. 27, 2015, ECF No. 56).

As stated earlier, the Court's February 27, 2015 Order granted summary judgment in favor of Defendants as to all but one claim.  Specifically, the Court found that Defendants failed to respond to Plaintiff's allegation that Defendant Patel revoked his first floor pass in retaliation against Plaintiff for refusing to "snitch" on inmates who were smoking. Accordingly, Defendants' motion for summary judgment as to that claim was denied without prejudice, and the parties were afforded an opportunity to submit materials in support of, or opposition to, the claim.  Defendants present such materials in the motion for summary judgment presently before the Court.

In the instant motion, Defendant Patel asserts that he is entitled to summary judgment because Plaintiff's first floor pass was not "revoked," as Plaintiff contends in his Complaint. Rather, Defendant Patel states that Plaintiff's bed was temporarily reassigned from the first floor to the second floor to accommodate another inmate's emergent medical issue which required a first floor bed. (Mot. for Summ. J. 6, ECF No. 62-1). Furthermore, Defendant Patel asserts that he had no role in the decision to reassign Plaintiff's bed; therefore he had no personal involvement and cannot be liable for any alleged Eighth

4

Amendment violation.  Finally, Defendant asserts that — even
assuming personal involvement — the temporary reassignment was
not the result of deliberate indifference to a serious medical
need.

Plaintiff has filed a response in opposition to Defendant's
motion. (ECF No. 69).  Plaintiff contends that it was, in fact,
Defendant Patel who directed that Plaintiff be moved to the
second floor. (Pl.'s Opp'n 3, ECF No. 69).  Plaintiff asserts
that on Monday, September 20, 2011, Defendant Patel told
Plaintiff "if you do not tell me who are the people that smokes
and deal with tobacco, you will not going ever again [sic] to
the first floor." (Id.).  Plaintiff also alleges that the
individual who was moved to Plaintiff's first-floor bed did not
have a medical emergency.  Plaintiff concludes that Defendant
Patel's deliberate indifference to Plaintiff's lung condition
exacerbated his condition and deteriorated his health. (Id. at
4-5).[1]

---

[1]Plaintiff also devotes a significant portion of his brief to
expressing his disappointment with the Court's previous decision
to deny Plaintiff's other claims against Defendant Patel;
namely, his claim relating to Defendant Patel's denial of a
transfer request, and his claims relating to the adequacy of
Defendant Patel's treatment.  Any issue Plaintiff may have with
the Court's decision to grant summary judgment in favor of
Defendant Patel as to those claims is not appropriately raised
in a response to the current summary judgment motion.  Plaintiff
had the opportunity to file a motion for reconsideration which
the Court denied.

DISCUSSION

A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.

6

Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n. 2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that

7

party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57.

B. Bivens

In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468, 64 L.Ed.2d 15 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228, 99 S. Ct. 2264, 60 L.Ed.2d 846 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412, 108 S. Ct. 2460, 101 L.Ed.2d 370 (1988)).

Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049, 125 S. Ct. 868, 160 L.Ed.2d 769 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987).

C. Eighth Amendment Deliberate Indifference Claim

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if

9

those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9,
112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)

Serious medical needs include those that have been
diagnosed by a physician as requiring treatment or that are so
obvious that a lay person would recognize the necessity for
doctor's attention, and those conditions which, if untreated,
would result in lifelong handicap or permanent loss. See Johnson
v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (citing
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U .S. 1006
(1988)).

The second element of the Estelle test requires an inmate
to show that prison officials acted with deliberate indifference
to his serious medical need.  "Deliberate indifference" is more
than mere malpractice or negligence; it is a state of mind
equivalent to reckless disregard of a known risk of harm. Farmer
v. Brennan, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d
811 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself
indicate deliberate indifference. Andrews v. Camden County, 95
F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.
Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir.
1984).  Similarly, "mere disagreements over medical judgment do

not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Rather, to establish deliberate indifference, a prisoner must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond to that need. See Farmer, 511 U.S. at 837; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. See Pierce v. Pitkins, 520 F. App'x 64, 66 (3d Cir. 2013) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

## III. DISCUSSION

Here, Plaintiff's only remaining claim is his allegation that Defendant Patel violated his Eighth Amendment rights by revoking Plaintiff's first floor pass because Plaintiff refused to "snitch" on inmates who were smoking.[2]

---

[2] As explained in the Court's February 27, 2015 Opinion, Plaintiff has not raised a First Amendment retaliation claim. Rather, his claims are premised upon the Eighth Amendment. See, e.g., (Compl. 11, 17-18, ECF No. 1).

A. Facts relevant to Plaintiff's remaining claim[3]

Plaintiff's medical record and the extensive factual
background of this case are set forth in the Court's February
27, 2015 Opinion and need not be repeated in detail here.  The
following is a recitation of the facts relevant to Plaintiff's
remaining claim.

Plaintiff was transferred to FCI Fort Dix in January 2009.
(Defs.' Statement of Material facts (hereinafter "Defs.' SOMF")
¶ 3, ECF No. 35-2).  On August 11, 2009, Plaintiff was seen by
medical staff at FCI Fort Dix for a Chronic Care Visit, at which
time he Plaintiff complained to medical staff that he was unable
to walk upstairs or across the compound without using albuterol
inhalers. (Decl. of Pradip Patel ("Patel Decl.") ¶ 9, ECF No.
35-5); (Pl.'s 2009 Records 10, ECF No. 28-6).  Plaintiff was

---

[3] The factual information contained in this section is taken from
documents available on the Court's docket as well as from the
Bates-stamped medical records submitted by Defendants in
connection with their previous motion for summary judgment.
These Bates-stamped documents — which are labeled with the
prefix "BOP" followed by a six digit number — were not filed on
the Court's docket.  Because the Court references these
documents in the instant Opinion, they will be made part of the
record.  However, because the documents contain Plaintiff's
medical information, the Court will file these documents under
temporary seal for a period of thirty days.  In the event the
parties seek to permanently seal these documents, they may file
a motion to seal pursuant to L.Civ.R. 5.3(c).  If neither party
moves to seal these documents within thirty days, the records
will be unsealed and the information contained therein will be
made available to the public.

issued temporary first floor and low bunk passes.[4] (Id.).  These passes were valid for a period of one year. (Patel Decl. ¶ 9); (Pl.'s Opp'n 1, ¶ 3, ECF No. 69).  Defendant states that Plaintiff was seen by Dr. Nicoletta Turner-Foster on July 9, 2010, who recommended that Plaintiff's first floor and lower bunk passes be renewed. (Patel Decl. ¶ 26); (Pl.'s 2010 Records 45, ECF No. 28-7).[5]  The passes were renewed on August 9, 2010. (Patel Decl. ¶ 28); (Pl.'s 2010 Records 47, ECF No. 28-7).

On January 11, 2011, Plaintiff was again seen by Dr. Turner-Foster and reported coughing up yellow phlegm, and coughing until he vomited. (Patel Decl. ¶ 31); (Pl.'s 2011

---

[4] In his brief in opposition to Defendant Patel's motion for summary judgment, Plaintiff adds that Dr. Abigail Lopez de Lasalle co-signed his first floor pass.  Indeed, the medical records submitted by Plaintiff confirm that Dr. Lopez de Lasalle co-signed the Clinical Encounter form. (Pl.'s 2009 Records 15, ECF No. 28-6).  However, this fact is not relevant to the resolution of Plaintiff's claim against Defendant Patel.

[5] In his brief in opposition to Defendant Patel's motion for summary judgment, Plaintiff contends that Defendants have misreported his medical history regarding the date he was seen by Dr. Turner-Foster.  Specifically, Plaintiff states, "[c]ontrary to this statement of the government it was not until August 13, 2009, that the plaintiff, was seen by Dr. Turner Foster." (Pl.'s Opp'n 1, ¶ 4, ECF No. 69).  Plaintiff has confused his dates.  Defendants' brief refers to the Chronic Care Encounter which occurred on July 9, 2010; not August 13, 2010.  The medical records submitted by Plaintiff confirm that such an evaluation occurred on that date. See (Pl.'s 2010 Records 45, ECF No. 28-7).  Regardless, both parties agree that Plaintiff's first floor and lower bunk passes were renewed on August 9, 2010. (Patel Decl. ¶ 28); (Pl.'s 2010 Records 47, ECF No. 28-7).

Records (Part One) 1, ECF No. 28-8).  Dr. Turner-Foster again
recommended that his first floor and lower bunk passes be
renewed. (Defs.' SOMF ¶ 110, ECF No. 35-2); (Patel Decl. ¶ 31);
(Pl.'s Opp'n 1, ¶ 6-7, ECF No. 69).[6]  The "Medical Duty Status"
reports for Plaintiff indicate that these first floor and lower
bunk passes were set to expire on August 11, 2011. (BOP000754-
758).

The record shows that Plaintiff was treated for his COPD
and related symptoms on February 4, 2011[7]; March 3, 2011[8]; and

---

[6] The parties disagree as to when, exactly, the first floor and
lower bunk passes were renewed in early 2011.  Plaintiff states
they were renewed during the January visit with Dr. Turner-
Foster. (Pl.'s Opp'n 1, ¶ 6-7, ECF No. 69).  In his brief in
support of his motion for summary judgment, Defendant asserts
that they were renewed on February 11, 2011. (Br. 8, ECF No. 62-
1).  Further confusing matters, in his Declaration, Defendant
Patel certifies that the lower bunk pass was renewed on February
4, 2011. (Patel Decl. ¶ 32).  The medical records submitted by
Defendant indicate that, at the least, the recommendation to
renew the first floor and lower bunk pass was made as a result
of the January 11, 2011 visit. (BOP000679).  Regardless, the
precise date on which the lower bunk pass was renewed at the
beginning of the 2011 year is immaterial to this Court's
analysis.

[7] (Patel Decl. ¶ 32); (Pl.'s 2011 Records (pgs. 1-42) 3, ECF No.
28-8).

[8] (Patel Decl. ¶ 33); (Pl.'s 2011 Records (pgs. 1-42) 6, ECF No.
28-8).

April 19, 2011[9].  On May 2, 2011[10], Defendant Patel reviewed a
previously performed pulmonology consult.  Additionally, after
Plaintiff had surgery on his elbow, Plaintiff's COPD condition
was monitored by Defendant Patel during several follow-up
encounters — specifically, on April 29, 2011[11]; on May 2, 2011[12];
May 3, 2011[13]; on May 5, 2011[14]; May 6, 2011[15]; May 13, 2011[16]; May
16, 2011[17]; May 18, 2011[18]; and May 24, 2011[19].

Plaintiff was again treated at the prison health services
for shortness of breath on June 13, 2011 and was ultimately

---

[9] (BOP000642); (Pl.'s 2011 Records (pgs. 1-42) 13-23, ECF No. 28-8).

[10] (BOP000608-610, 000611); (Pl.'s 2011 Records (pgs. 1-42) 32, 38, ECF No. 28-8).

[11] (BOP000620); (Pl.'s 2011 Records (pgs. 1-42) 36, ECF No. 28-8).

[12] (BOP000608-610); (Pl.'s 2011 Records (pgs. 1-42) 38, ECF No. 28-8).

[13] (BOP 000605-000607).

[14] (BOP000602-604); (Pl.'s 2011 Records (pgs. 1-42) 39, ECF No. 28-8).

[15] (BOP 00599-000601); (Pl.'s 2011 Records (pgs. 1-42) 40, 42, ECF No. 28-8).

[16] (BOP000582-586).

[17] (BOP000577-580).

[18] (BOP000574-576).

[19] (BOP000558); (Pl.'s 2011 Records (pgs. 43-69) 7, ECF No. 28-9).

admitted to an outside hospital. <u>See</u> (BOP000539-544); (Patel
Decl. ¶ 39); (Pl.'s 2011 Records (pgs. 43-69) 20-21, ECF No. 28-
9). He was scheduled for discharge from the hospital on June
14, 2011, (BOP000538); (Patel Decl. ¶ 44), but due to a positive
blood culture, he remained in the hospital over the weekend and
was discharged on June 18, 2011 (BOP000534-537); (Patel Decl. ¶
44); (Pl.'s 2011 Records (pgs. 43-69) 22-23, ECF No. 28-9).

The June 18, 2011 medical record, which is not signed by
Defendant Patel, indicates that Plaintiff was discharged to his
housing unit with no restrictions. (BOP000531); (Pl.'s 2011
Records (pgs. 43-69) 23, ECF No. 28-9). This appears to be an
anomaly, however, because, as set forth above, Plaintiff's first
floor and lower bunk passes were not set to expire until August
11, 2011; and a status report dated two days later on June 20,
2011 again confirms the August 11, 2011 expiration date.
(BOP000754).

Plaintiff was seen by Defendant Patel at a Chronic Care
appointment on June 27, 2011 and his COPD condition was again
monitored. (Patel Decl. ¶ 45); (BOP000515-522). A medical duty
status report dated July 15, 2011, indicates that Plaintiff's
first floor and lower bunk passes had been extended and were set
to expire on August 11, 2012. (BOP000753). On August 8, 2011,
Plaintiff was examined by a cardiologist and was scheduled for a

stress test. (BOP000503-505); (Pl.'s 2011 Records (Part 2) 5-8, 10, ECF No. 28-10).

The record shows that Plaintiff was not seen again until he reported to Sick Call for shortness of breath on October 3, 2011. (BOP000495-498); (Pl.'s 2011 Records (Part 2) 16, ECF No. 28-10). However, the October 3, 2011 medical duty status report indicates that Plaintiff did not have a first floor or lower bunk pass on that date. (BOP000752). This is significant given that the previous medical duty status report, dated July 15, 2011, indicated that Plaintiff's first floor and lower bunk passes were not set to expire until August 11, 2012.

During a Chronic Care encounter on October 6, 2011, Defendant Patel examined Plaintiff and transferred him to a local hospital. (BOP00491-00494); (Patel Decl. ¶ 48); (Pl.'s 2011 Records (Part 2) 17-18, ECF No. 28-10). In the medical record for the October 6, 2011 visit, a notation reveals for the first time that Plaintiff complained that inmates in his unit were smoking, but that Plaintiff was afraid that he would be attacked if he reported the identities of these inmates. (Id.).

Plaintiff was discharged from the hospital on October 17, 2011. (Patel Decl. ¶ 49); (Defs.' SOMF ¶ 161); (Pl.'s 2011 Records (Part 3) 24, ECF No. 28-10). On October 19, 2011, he was again seen by Defendant Patel at which time Plaintiff requested, and Defendant Patel issued, a first floor pass.

(BOP000462, BOP000751); (Patel Decl. ¶ 50).  Plaintiff was

reassigned to a room on the first floor on October 27, 2011.

(Pl.'s Opp'n 7, ECF No. 69) (Mot. for Summ. J. 6, ECF No. 62-1).

   B. <u>Analysis</u>

      1. <u>Personal Involvement</u>

   "[A] party may establish liability for deprivation of a

constitutional right only through a showing of personal

involvement by each defendant." <u>Farrar v. McNesby</u>, No. 15-2019,

2016 WL 759571, at *2 (3d Cir. Feb. 25, 2016) (citing <u>Rode v.

Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)).  "Personal

involvement may be shown through personal direction, actual

participation in the alleged misconduct, or knowledge of and

acquiescence in the alleged misconduct." <u>Id.</u>; <u>see also</u> <u>Tenon v.

Dreibelbis</u>, 606 F. App'x 681, 688 (3d Cir. 2015).

   In the brief in support of summary judgment, Defendant

Patel asserts that summary judgment is appropriate because he

was not personally involved in the decision to temporarily

reassign Plaintiff to the second floor.  However, Defendant

Patel does not submit an affidavit explicitly denying

Plaintiff's allegations regarding his revocation or cancellation

of the first floor pass.  Rather, the motion relies on an

affidavit which was submitted in support of Defendants' previous

motion for summary judgment.  As the Court discussed in its

February 27, 2015 Opinion, that motion and its supporting

affidavits "did not respond to Plaintiff's allegation that Dr. Patel revoked his first floor pass in September 2011 in retaliation for Plaintiff's refusal to snitch on other inmates who were smoking." (ECF No. 56 at 23).   Therefore, it is still unclear from the record if, and when, Plaintiff's first floor pass was revoked by Defendant Patel.

Moreover, Defendant's underlying argument is that he did not cancel or revoke Plaintiff's pass, and that Plaintiff was temporarily reassigned to the second floor despite the fact that he did, in fact, possess a first floor pass at the time.  See (Patel Decl. ¶50); (Br. in Support of Summ. J. 10-11).  However, a medical duty status report dated October 3, 2011 shows no indication that Plaintiff possessed a first floor or lower bunk pass at that time. (BOP000752).  Defendant Patel does not explain the October 3, 2011 record.

Further confusing matters, Defendant Patel certifies that on October 19, 2011, he renewed Plaintiff's first floor and lower bunk passes for a period of six months, see (Patel Decl. ¶ 50), and the medical duty status report from that date confirms that on October 19, 2011, Plaintiff possessed passes that were set to expire on April 30, 2012. (BOP000751).  However, as discussed above, Defendant's argument is that Plaintiff's passes had never been revoked, and that Plaintiff was temporarily reassigned despite their existence.  Therefore, it is unclear

19

why a "renewal" of Plaintiff's existing passes was necessary on October 19, 2011, or why a renewal would have resulted in Plaintiff's return to the first floor.  Additionally, the record shows that as of July 15, 2011, Plaintiff's first floor and lower bunk passes were valid until August 11, 2012. (BOP000753). Thus, it is equally unclear why a "renewal" of existing passes set to expire on August 11, 2012 would result in passes set to expire on April 30, 2012.

Further, in support of Defendant's assertion that he lacked personal involvement in the decision to reassign Plaintiff to the second floor, Defendant submits the declaration of Leander Batiste, a BOP Correctional Counselor at FCI Fort Dix. (Decl. of Leander Batiste, ECF No. 62-2) ("Batiste Decl.").  Mr. Batiste certifies that he — and not Defendant Patel — made the decision to temporarily reassign Plaintiff to a second floor room, despite the fact that Plaintiff possessed a first floor pass at that time. (Batiste Decl. ¶ 5-6).  However, Plaintiff does not dispute the fact that it was Mr. Batiste who reassigned his room to the second floor.  Rather, Plaintiff argues in his Opposition that Mr. Batiste conducted this housing reassignment at the request of Defendant Patel and as a direct result of Defendant Patel's revocation of Plaintiff's first floor pass. (Pl.'s Opp'n 3, ECF No. 69).  Defendant did not submit a Reply to address

this argument, nor does Defendant Patel's affidavit dispute this allegation.

As discussed above, Defendant Patel has failed to directly respond to Plaintiff's allegation that he revoked Plaintiff's first floor pass.  Additionally, the record — which shows that Plaintiff had a first floor pass which was valid for more than a year on July 15, 2011, and then did not have a first floor pass on October 3, 2011 — suggests that the pass was revoked at some time in between those two dates, as Plaintiff alleges.  See Marino, 358 F.3d at 247 (holding that justifiable inferences are to be drawn in non-moving party's favor).  For these reasons, Defendant has not shown the absence of a genuine issue of material fact with respect to his personal involvement, and summary judgment is not warranted on this basis.  See Celotex, 477 U.S. at 323.

2. Eighth Amendment

Defendant next argues that, even if he had been involved in Plaintiff's reassignment to the second floor, said reassignment does not rise to the level of an Eighth Amendment violation. (Mot. for Summ. J. 12, ECF No. 62-1).  More specifically, Defendant frames Plaintiff's claim as a complaint that Plaintiff was "somewhat uncomfortable" because he was forced to climb one flight of stairs for a period of approximately five weeks. (Id.).  Because Defendant concludes that Plaintiff's discomfort

during his reassignment to the second floor — from September 20,
2011 to October 27, 2011 — does not establish an Eighth
Amendment violation, Defendant asserts that summary judgment in
his favor is appropriate.

However, Defendant's argument fails to address the elements
of an Eighth Amendment violation.  As set forth above, an Eighth
Amendment violation in the context of medical care occurs where
a prison official acts with deliberate indifference to a serious
medical need.  Estelle, 429 U.S. at 106.  Therefore, Defendant's
focus on the outcome — i.e., the discomfort endured by Plaintiff
— does not establish that there was no Eighth Amendment
violation as a matter of law.[20]

---

[20] The Court notes that the cases cited in Defendant's brief do
not support his argument.  As an initial matter, all but one of
the cases cited address pure conditions of confinement claims
such as complaints regarding crowded, unsanitary cells.  See,
e.g., Burkholder v. Newton, 116 F. App'x 358, 363 (3d Cir.
2004); Carson v. Mulvihill, 488 F. App'x 554, 560 (3d Cir.
2012); Lindsey v. Shaffer, 411 F. App'x 466, 468 (3d Cir. 2011).
A pure conditions of confinement claim begs a slightly different
analysis than an adequacy of medical care claim, which is
presented in this case.  Moreover, these cases further
demonstrate that the test for an Eighth Amendment violation is
not determined by a resulting outcome or injury, and is instead
based on whether a prison official acted with deliberate
indifference to a substantial risk of serious harm.  See Farmer,
511 U.S. at 828.  Finally, this Court notes that the one case
cited by Defendant which includes an adequacy of medical care
claim was denied — not based on the level of pain or discomfort
the plaintiff endured — but because the record demonstrated that
plaintiff received immediate medical treatment sufficient to
defeat a claim of deliberate indifference.  Rios-Salinas v. de
LaSalle, No. 11-2036, 2012 WL 2340935, at *3 (D.N.J. June 19,

Despite Defendant's failure to address the elements of
Plaintiff's medical care claim, the Court will nevertheless
analyze whether, based on the summary judgment record, there was
no Eighth Amendment violation as a matter of law, as Defendant
alleges.   In conducting this analysis, this Court first notes
that Plaintiff's medical needs were "serious" within the meaning
of Estelle.   Plaintiff's COPD had been diagnosed by several
doctors and, at the time of Plaintiff's reassignment to the
second floor, he required treatment in the form of first floor
and lower bunk passes — a fact which Defendant concedes. See
Johnson, 373 F. App'x at 153 n.1 (holding that serious medical
needs include those that have been diagnosed by a physician as
requiring treatment).   Further, Defendant does not dispute the
seriousness of Plaintiff's medical need.   Having found that
Plaintiff had a serious medical need sufficient to satisfy the
first prong of Estelle, the Court must next determine whether a
genuine issue exists as to a prison official's deliberate
indifference to that medical need.

Deliberate indifference may be found where, for example, a
prison official knows of a prisoner's need for medical treatment
but intentionally refuses to provide it; or where a prison

---

2012).   Thus, Defendant's reliance on Rios-Salinas is likewise
misplaced.

official intentionally delays necessary medical treatment based on a non-medical reason. See Pierce, 520 F. App'x at 66.  In this case, Plaintiff asserts that Defendant Patel revoked his first floor pass because Plaintiff refused to identify inmates who were smoking.  Thus, Plaintiff has alleged that Defendant intentionally withheld treatment which had been previously deemed medically necessary — i.e., the first floor pass — for non-medical reasons.  Defendant Patel does not directly address this allegation in his affidavit.

Instead, Defendant submits the affidavit of Mr. Batiste, who certifies that Plaintiff was temporarily reassigned to accommodate another inmate's medical emergency.  However, Defendant does not provide any specific information regarding the other inmate's identity or emergent medical need; nor does Defendant provide any records or evidence to support this contention.

In sum, the summary judgment record with respect to Plaintiff's Eighth Amendment claim against Defendant Patel consists of Plaintiff's medical records — which, as discussed above, do not conclusively explain when or if Plaintiff's first floor and lower bunk passes were revoked — and the affidavits of the parties and Mr. Batiste.  Based on this record, a jury could return a verdict in Plaintiff's favor; therefore a genuine issue of fact exists.  Accordingly, summary judgment is inappropriate.

See <u>Anderson</u> 477 U.S. at 527 (holding that in deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts).

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny without prejudice Defendant Patel's motion for summary judgment.

An appropriate Order follows.


_____s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: July 19, 2016
At Camden, New Jersey