UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                :
FRANCISCO GONZALEZ,             :
                                :
        Plaintiff,              :   Civ. No. 12-3711 (NLH)
                                :
    v.                          :   OPINION
                                :
DONNA ZICKEFOOSE, et al.,       :
                                :
        Defendants.             :
_____:
```

**APPEARANCES:**

Francisco Gonzalez, #49351-004
D. Ray James Correctional Facility
G-1 015L
HWY 252 East
Folkston, GA 31537
    Plaintiff pro se

David Bober, Esq.
Assistant United States Attorney
402 E. State Street, Room 430
Trenton, NJ 08608
    Counsel for Defendants

**HILLMAN, District Judge**

Pending before the Court is the motion for summary judgment by Defendant, Pradip Patel, M.D., on the claims of Plaintiff, Francisco Gonzalez, that Defendant violated his Eighth Amendment rights when Defendant revoked Plaintiff's first-floor housing pass because Plaintiff would not reveal who was smoking in his unit. For the reasons that follow, Defendant's motion for summary judgment will be granted.

**BACKGROUND**

Plaintiff, an inmate previously confined at the Federal Correction Institution in Fort Dix, New Jersey, filed this action asserting claims pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).[1] The Court screened the complaint pursuant to 28 U.S.C. § 1915(e), and by way of several motions, the remaining claim in Plaintiff's complaint is his Eighth Amendment violation claim against Patel. On July 22, 2016, the Court denied without prejudice Patel's previous motion for summary judgment because there were unaddressed discrepancies in the medical records that precluded judgment in Patel's favor. Patel has again renewed his motion for summary judgment, arguing that the record clearly shows that he did not violate Plaintiff's Eighth Amendment rights. Plaintiff has opposed Patel's motion.

The Court incorporates the more detailed procedural history and background facts from the Court's prior Opinions (see Docket No. 56, 67, 70, 77), and will not restate them again here, other than to provide the facts relevant to the instant motion. Plaintiff, who suffers from chronic obstructive pulmonary disorder (COPD), was transferred to FCI Ft. Dix in January 2009. In August 2009, after Plaintiff complained of difficulty walking

---

[1] Plaintiff is currently an inmate at the D. Ray James Correctional Facility in Folkston, Georgia.

upstairs, a BOP physicians' assistant, Eric Gostkowski, issued him a first-floor pass and a lower-bunk pass. The passes were good for one year. Plaintiff was seen by Dr. Nicoletta Turner-Foster, a BOP employee, who recommended that both passes be renewed for another year, and on August 9, 2010, the passes were renewed.

On January 11, 2011, during a chronic care clinic appointment, Dr. Turner-Foster once again recommended that Plaintiff's first-floor pass be renewed, and the pass was renewed on February 11, 2011, with an expiration date of August 11, 2011. On July 15, 2011, Plaintiff was seen by mid-level practitioner Vicente Elias, who extended the first-floor pass until August 11, 2012.

On September 20, 2011, Plaintiff was transferred from a first-floor room to a second-floor room. Plaintiff was again seen by Elias at Health Services on October 3, 2011, and on that date Elias issued him a "medical convalescence," which meant that Plaintiff was permitted, for medical reasons, to stay in his cell and be absent from his BOP work assignment.

On October 6, 2011, Plaintiff was seen by Patel for complaints of difficulty breathing and shortness of breath. The record for that date reflects that Plaintiff complained about other inmates smoking in his unit. The note states: "He states a lot of inmates are smoking in his unit but is afraid of being

3

attaked [sic] if he tells anyone." Patel diagnosed Plaintiff with pneumonia and Plaintiff was transferred to a hospital outside of Ft. Dix. Plaintiff spent more than a week in the hospital and was discharged on October 17, 2011.

On October 19, 2011, Plaintiff once again saw Patel at Ft. Dix Health Services, and requested to be transferred back to the first floor. Although a first-floor pass was already in effect, Patel nonetheless completed an MDS form that "renewed" the pass through April 30, 2012 (though previously it had been set to expire in August 2012). It appears that the pass did expire on April 30, 2012, but Patel renewed it again when he saw Plaintiff on May 23, 2012, and Plaintiff remained in a first floor room for the remainder of 2012.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n. 2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of

5

material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57.

### B. Bivens

In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court

held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468, 64 L.Ed.2d 15 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228, 99 S. Ct. 2264, 60 L.Ed.2d 846 (1979). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412, 108 S. Ct. 2460, 101 L.Ed.2d 370 (1988)).

Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049, 125 S. Ct. 868, 160 L.Ed.2d 769 (2005). Both are designed to provide redress for constitutional violations. Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987).

**C.  Eighth Amendment Deliberate Indifference Claim**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)

Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Johnson v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (citing Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988)).

8

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).

Rather, to establish deliberate indifference, a prisoner must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond to that need. See Farmer, 511 U.S. at 837; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Deliberate indifference may be found where the prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical

9

treatment. See Pierce v. Pitkins, 520 F. App'x 64, 66 (3d Cir. 2013) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

"[A] party may establish liability for deprivation of a constitutional right only through a showing of personal involvement by each defendant." Farrar v. McNesby, No. 15-2019, 2016 WL 759571, at *2 (3d Cir. Feb. 25, 2016) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement may be shown through personal direction, actual participation in the alleged misconduct, or knowledge of and acquiescence in the alleged misconduct." Id.; see also Tenon v. Dreibelbis, 606 F. App'x 681, 688 (3d Cir. 2015).

**D. Analysis**

Plaintiff's claim is that Patel violated his Eighth Amendment rights by revoking Plaintiff's first-floor pass on September 20, 2011 because Plaintiff refused to "snitch" on inmates who were smoking. In the Court's July 22, 2016 Opinion, the Court observed that discrepancies in the medical records, which were not sufficiently addressed by Patel, precluded the entry of summary judgment in Patel's favor. Patel's renewed motion for summary judgment has explained those discrepancies, and the record is clear that no material disputed facts remain to send to a jury on Plaintiff's Eighth Amendment violation claim.

The evidence shows:

(1) Patel did not see Plaintiff on September 20, 2011. BOP records indicate that 54 inmates were seen at Health Services "sick call" on September 20, 2011 for a variety of ailments, but Plaintiff was not one of them.

(2) The October 3, 2011 "medical duty status" or "MDS" form does not contain any indication regarding a first-floor pass, as the sole reason the MDS form was created on this date was to provide Plaintiff with a medical convalescence, and it did not reflect a change in Plaintiff's first-floor pass.

(3) The record for Plaintiff's clinical encounter with MLP Elias on October 3, 2011 does not indicate that Plaintiff complained about his room location.

(4) On October 6, 2011, Plaintiff was seen by Patel for complaints of difficulty breathing and shortness of breath. The record for that date reflects that Plaintiff, for the first time, complained about other inmates smoking in his unit.

(5) When Plaintiff saw Patel again on October 19, 2011, and Plaintiff asked to be transferred back to the first floor, a first-floor pass was already in effect and valid until August 2012. Despite the active first-floor pass, Patel filed an MDS that "renewed" the pass through April 30, 2012, and again renewed it again in May 2013.

The record evidence also explains the logistics of first-floor passes and why Plaintiff was temporarily reassigned to a second floor room:

(1) On September 11, 2011, BOP correctional staff member, Leander Batiste, reassigned Plaintiff due to bed-space constraints.

(2) On the East Compound of FCI Ft. Dix where Plaintiff was housed, there are beds for approximately 1,850 inmates, but only 112 are on the first floor. In Plaintiff's unit, Unit 5702, there were 368 total beds, but only 16, or 4%, were on the first floor.

(3) BOP Health Services staff is responsible for determining whether an inmate requires a first-floor pass for medical reasons, but medical personnel do not work in the housing units, and, when they issue a first-floor pass, they do not generally have any way of knowing how many other inmates in that unit already have first-floor passes, or whether there are any first-floor beds available in that inmate's unit. Thus, on occasion, due to a large number of inmates requesting first-floor passes and the relatively small number of beds available, there are times when the number of inmates with first-floor passes exceeds the number of available beds.

Based on the foregoing, the unrefuted evidence reveals that Patel could not have revoked Plaintiff's first floor pass on

September 20, 2011 because Plaintiff did not see Patel that day. When Plaintiff saw Patel on October 6, 2011, that was the first notation about Plaintiff's complaint about smoking in his unit, and Plaintiff was immediately sent to the hospital. When Plaintiff returned from the hospital, Patel granted Plaintiff's request for a first-floor pass, which was extended through the end of 2012. Thus, Patel could not have revoked Plaintiff's first floor pass on September 20, 2011 as Plaintiff claims, and the medical records clearly show that Patel granted, rather than revoked, Plaintiff's multiple requests for a first-floor pass. Moreover, the space constraints of the unit, the very small number of first-floor rooms available, and the independent actions of BOP officials in making room assignments are facts that are unrefuted.

There is no doubt that Plaintiff suffers from a serious health condition and that tobacco smoke in the correctional facility would exacerbate that condition. There is also no doubt that Patel was aware of Plaintiff's serious health condition and the detrimental effect tobacco smoke would have on Plaintiff. The undisputed evidence does not show, however, that Patel revoked Plaintiff's first-floor pass in order to deliberately harm Plaintiff by making him use stairs to go to the second floor or to expose him to tobacco smoke because Plaintiff would not reveal which inmates were smoking.

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  <u>Scott v. Harris</u>, 550 U.S. 372, 381 (2007). That is exactly the case here.  The unrefuted evidence demonstrates that Patel was not deliberately indifferent to Plaintiff's serious medical need in violation of his Eighth Amendment rights.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment.  An appropriate Order follows.


                              s/ Noel L. Hillman
                              NOEL L. HILLMAN
                              United States District Judge

Date: April 7, 2017
At Camden, New Jersey